# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUDY J. DORIA,<br><br>        Plaintiff,<br><br>    v.<br><br>S. TERRELL,<br><br>        Defendant.<br>_____ / | CASE NO. 1:03-cv-5824-LJO-DLB PC<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED IN IT'S ENTIRETY AND THAT PLAINTIFF'S STATE LAW CLAIMS BE DISMISSED WITHOUT PREJUDICE<br><br>(Doc. 42) |

A. <u>Procedural History</u>

Plaintiff is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on Plaintiff's amended complaint filed on October 8, 2003, against Defendant Terrell for acting with deliberate indifference to Plaintiff's serious medical needs, in violation of the Eighth Amendment. At the time of the events at issue in this action, Plaintiff was a state prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), and was housed at Pleasant Valley State Prison ("PVSP").

Defendant filed a motion for summary judgment on December 28, 2007. Plaintiff filed an opposition on January 14, 2008. Defendant filed a reply on January 25, 2008.

B. <u>Legal Standard</u>

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

C. Undisputed Facts[1]

1. Background Facts

1. Plaintiff Rudy Doria is a prisoner serving a state prison term for murder.
2. On January 10, 2003, prison officials transferred Doria to Pleasant Valley State Prison (PVSP).

---

[1] Plaintiff neither filed his own separate statement of disputed facts nor admitted or denied the facts set forth by Defendants as undisputed in compliance with Local Rule 56-260(b). Further, Plaintiff did not tender any evidentiary objections in any other form. FDIC v. New Hampshire Ins. Co., 953 F.2d 478, 484 (9th Cir. 1992) (evidentiary defects waived absent objection). Therefore, Defendants' statement of undisputed facts is accepted except where brought into dispute by Plaintiff's complaint. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) (verified complaint may be used as an opposing affidavit *if it is based on pleader's personal knowledge of specific facts which are admissible in evidence*). A verified opposition to a motion for summary judgment may also be considered as an opposing affidavit for purposes of the summary judgment rule if it is based on facts within the pleader's personal knowledge. Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998).

3

3.   When he was transferred, Doria did not have a copy of his medical chrono.

4.   On January 22, 2003, Doria appeared before the Unit Classification Committee.

5.   Defendant Terrell was not a member of that committee.

6.   Doria's medical file had not arrived at PVSP by the time of the Classification Committee meeting.

7.   It did not arrive until February 2003.

8.   Doria was present at the Classification committee meeting and informed the committee of his medical concerns.

9.   The first time Doria presented documentation of any problem with his lower back to Terrell was when he gave her a copy of his administrative appeal (CDCR 602), dated February 3, 2002, requesting a lower bunk.  He does not recall when he did that.

10.  There was no documentation of his medical condition attached to the 602 he showed Terrell.

11.  Doria reported to work January 23, 2003.

12.  At some point he showed his supervisor, Z. Rodriguez, a CDC 128 C chrono dated August 20, 2002, that prohibited prolonged standing, climbing, bending, stooping, twisting, lifting, walking, crawling, and use of arms for one year from the date of the chrono.

13.  The chrono does not state that he cannot work in an auto upholstery shop, instead it merely sets forth certain limitations on the types of physical activity he can perform.

14.  Doria was responsible for informing his work supervisor of his medical limitations, and his supervisor was responsible for making reasonable efforts to accommodate any verified, documented medical disability that Doria might have had.

15.  The next day, Rodriguez told Doria that he would write a 12B informational chrono and submit it to Terrell.

16.  Doria does not recall when Rodriguez told him he had submitted it to Terrell; however, the 128B is dated March 7, 2003, and Doria believes Rodriguez submitted it to Terrell within a couple of weeks of having told him he would do so.  The 128B states, "With safety in mind for the student as well as for the staff it is to the best interest of the Department of Corrections at Pleasant Valley State Prison to have Doria unassigned due to his medical

4

disability."

17. Doria contends this was not the proper procedure for relieving Doria of his work assignment.
18. As a correctional counselor, Terrell was not qualified or empowered to make a medical decision about an inmate, including whether he was physically capable of performing a particular job.
19. Doria's job supervisor could not unassign Doria from the auto upholstery job.
20. For this reason, the 128B was not grounds for the classification committee to unassign Doria.
21. If Doria wanted to be unassigned from his job, he needed to see a doctor, who could issue a medical chrono explicitly precluding home from working in the auto upholstery shop.
22. Doria could have seen a doctor either by getting in the emergency medical line at any meal time, or, if he did not need emergency attention, by filling ut a form to get an appointment with a doctor.
23. The form is available at the emergency medical line and could have been picked up by Doria at any meal time.
24. If Doria needed assistance getting a medical appointment, Terrell would have helped him.
25. Doria never presented Terrell with a medical chrono stating that he was precluded from working in the auto. upholstery shop.
26. On April 16, 2003, Doria filed a Reasonable Modification or Accommodation Request (CDC form 1824), complaining only about the unclothed body searches to which he was subjected as part of his job assignment and asking to be unassigned from his job.
27. Defendant Fogelman granted the request three weeks later.
28. Doria was not relieved of his job assignment, even after subsequent conversations with Fogelman about his physical limitations.
29. By the time Doria filed his CDC form 1824, Terrell was no longer his counselor. Instead, Counselor Eddings had taken over his case.
30. At some point, Eddings told Doria not to report to work anymore and Doria complied.
31. During the time Doria worked at the auto upholstery shop, he did not perform all of the duties that the job entailed.

5

1   32.     For the first month, he did mostly paperwork.
2   33.     Even after that, he did not do heavy manual labor.
3   34.     By his own account, he did not do much at all.
4   35.     Doria hurt his back at the auto upholstery job seriously enough to require medical attention
5           once, on July 23, 2003.
6   36.     Defendant Terrell is no longer employed as a correctional counselor at PVSP.
7   37.     Terrell contends she was never indifferent to Doria's back problems, but never had sufficient
8           documentation to warrant taking him back to the classification committee for reassignment.

D.     Discussion[2]

Plaintiff alleges that Defendant violated his civil rights by forcing him to work at a prison job assignment that was incompatible with his physical limitations. Plaintiff claims he told Defendant, his correctional counselor, about his physical limitations and that she failed to have him removed from his job assignment in the prison auto upholstery shop. Thus, Plaintiff contends she violated his right under the Eighth Amendment to be free from cruel and unusual punishment.

Defendant argues that she is entitled to summary judgment because she did not display deliberate indifference to Plaintiff's condition. Defendant points out that Plaintiff admits that he had no documentation of his physical limitations at the time he was assigned to the auto upholstery job (UF 3, 4, 6, 7) and Terrell did not sit on the classification committee that made the assignment. UF. 5. Defendant contends that once Plaintiff was assigned to the auto upholstery job, his job supervisor was expected to accommodate whatever physical limitations Plaintiff may have. UF 14. Defendant contends that Plaintiff could not be reassigned without a medical chrono explicitly stating that he could not work at that job, which Plaintiff did not have. UF 8-21. Instead, Plaintiff had only a medical chrono describing his limitations. Defendant contends that whether those limitations could be accommodated was to be worked out between Plaintiff's supervisor and his medical provider. Defendant contends it was not her decision to make. UF 18-24. Defendant argues that her adherence

---

[2] Plaintiff's complaint and opposition are verified and shall be treated as affidavits for purposes of the summary judgment rule where they are based on facts within Plaintiff's personal knowledge of admissible evidence, and not merely on Plaintiff's belief. Lew v. Kona Hospital, 754 F.2d 1420, 1423 (9th Cir. 1985); Fed. R. Civ. P. 56(e).

6

to CDCR policy was not a sign of deliberate indifference.

The Court finds that Defendant has met her initial burden of informing the Court of the basis for his motion, and identifying those portions of the record which she believes demonstrate the absence of a genuine issue of material fact. The burden therefore shifts to Plaintiff to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). As stated above, in attempting to establish the existence of this factual dispute, Plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). A prisoner's claim of inadequate medical care does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)). A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 834 (1994).

Plaintiff's opposition is essentially a reiteration of the allegations set forth in the complaint. It appears Plaintiff has confused the showing he must make at this stage with the initial showing he had to make to state a claim for relief. Although Plaintiff's allegations were sufficient to state a claim for relief under federal notice pleading standards, at this stage in the litigation, Plaintiff must come forth with evidence in support of his claims. Plaintiff has not done so.

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official

should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

Plaintiff's mere allegations that Defendant was obligated to take corrective action based on Plaintiff's request are insufficient to defeat Defendant's motion. Plaintiff has not submitted any evidence to refute Defendant's claim that she was not authorized to change Plaintiff's job status. While Plaintiff may argue that Defendant "should have" unassigned him from his job, the undisputed evidence is that she did not have the authority to do so.

It is undisputed that during the relevant time period, Plaintiff had some physical limitations due to back problems. *See* DUF 12-13. However, although Plaintiff asserts that his job in the auto upholstery shop required him to perform work outside of his physical capability, Plaintiff has presented no documented medical evidence of this or evidence that he had sought a job change through the proper channels available at the prison but was denied that accommodation by Defendant directly. Plaintiff gave Defendant a copy of his administrative appeal (CDCR 602), dated February 3, 2003, requesting a lower bunk but there was no documentation of his medical condition attached to the 602. DUF 9-10. Subsequently, Defendant was given an informational chrono from Plaintiff's job supervisor wherein the supervisor opines that Plaintiff should be unassigned. *See* DUF 15-16. However, the proper procedure for relieving Plaintiff of his work assignment would have been for Plaintiff to obtain a medical chrono from his doctor explicitly directly that he be reassigned. DUF 17-23. Plaintiff did not do so.

It appears that Plaintiff did file a Reasonable Modification or Accommodation Request (CDC form 1824) on April 16, 2003 requesting that he be unassigned from his job. DUF 26. The request was granted three weeks later, however, by this time, Defendant was no longer his counselor. DUF 29.

Plaintiff's argument that Defendant did not comply with the provisions of the Armstrong Remedial Plan is also unavailing. To the extent that Plaintiff wishes to seek assistance that he believes is due pursuant to the Armstrong Remedial Plan, plaintiff "must pursue his request via the consent decree or through class counsel." Crayton v. Terhune, No. C 98-4386 CRB(PR), 2002 WL

31093590, *4 (N.D. Cal. Sept. 17, 2002). Plaintiff may not sue for damages in this action solely on the basis that Defendant allegedly violated the Armstrong Remedial Plan.

There is no evidence from which a trier of fact could conclude that Defendant was deliberately indifferent to a serious risk of harm to Plaintiff.

Finally, pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III . . . ," except as provided in subsections (b) and (c). "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." Acri v. Varian Assoc., Inc., 114 F.3d 999, 1000 (9th Cir. 1997). "The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966).

In the instant case, the Court finds that Defendant is entitled to summary judgment on all of Plaintiff's federal claims against her. As a result, the only claim left in this action is a state law claim. The undersigned therefore recommends that the Court decline to exercise supplemental jurisdiction over plaintiff's state law claims and that the claims be dismissed from this action, without prejudice.

E.   Conclusion

For the foregoing reasons, the Court finds that Plaintiff has not met his burden of setting forth admissible evidence raising triable issues of material fact, and Defendant is entitled to judgment as a matter of law on the claims against her. The Court therefore recommends that Defendant's motion for summary judgment, filed December 28, 2007, be GRANTED and the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims, thus concluding this action in its entirety.

These Findings and Recommendations will be submitted to the United States District Judge

assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days after being served with these Findings and Recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **May 6, 2008**      /s/ **Dennis L. Beck**
UNITED STATES MAGISTRATE JUDGE